IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOSEPH O'BRIEN,   CV-04-6429-MO

          Plaintiff,   OPINION AND ORDER

  v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

          Defendant.

---

    KATHRYN TASSINARI
    ROBERT BARRON
    474 Willamette, Suite 200
    Eugene, OR  97401
        Attorneys for Plaintiff

    KARIN J. IMMERGUT
    United States Attorney
    District of Oregon

    NEIL EVANS
    Assistant United States Attorney
    1000 S.W. Third Avenue, Suite 600
    Portland, OR  97204-2902

    LEISA A. WOLF
    Special Assistant United States Attorney
    Social Security Administration
    701 5th Avenue, Suite 2900 M/S 901
    Seattle, WA  98104-7075
        Attorneys for Defendant

**MOSMAN, J**.

## BACKGROUND

Plaintiff, Joseph O'Brien (O'Brien), brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under

1 - ORDER AND OPINION

Title XVI of the Social Security Act (the Act). 42 U.S.C. § 1383(c)(3). This court has jurisdiction under 42 U.S.C. § 405(g).

O'Brien applied for SSI on October 19, 1999, alleging disability beginning August 13, 1998, due to substance addiction, low vision in the right eye, and osteomyelitis.[1] Tr. 474. O'Brien was 60 years old at the time of the Administrative Law Judge's (ALJ's) final decision, denying benefits. Id. He claimed to have a college degree from the University of Oregon, and past work as a painting contractor and odd jobs worker. Tr. 528-29.

After the first decision denying his application was final, O'Brien sought judicial review in this court. However, the tape of his December, 2001, hearing before the ALJ was lost, so this court remanded the matter until the tape could be located or the file reconstructed. Tr. 539. Ultimately, the tape was not located, so a new hearing was held in June, 2004, after which the ALJ again denied O'Brien's application. Tr. 470-82.

On appeal to this court, O'Brien contends the ALJ erred by (1) failing to provide legally sufficient reasons to discredit the opinion of Barbara Perry, Ph.D.; (2) failing to address the chart notes and opinions of Felice Nirenstein-Rich; (3) failing to find O'Brien's alleged anemia to be a severe impairment, within the meaning of the Act; and, (4) failing to meet his burden of showing O'Brien can perform other work in the national economy.

For the reasons that follow, the Commissioner's decision is AFFIRMED and this case is DISMISSED.

## STANDARD OF REVIEW

The initial burden of proof rests upon the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert denied, 517 U.S. 1122 (1996). To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically

---

[1] Osteomyelitis is characterized by inflamation in the bone marrow and adjacent bones.

2 - ORDER AND OPINION

determinable physical or mental impairment which can be expected...to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). Each step is potentially dispositive.

Here, at step one the ALJ found O'Brien had not engaged in substantial gainful activity since his alleged disability onset date. Tr. 481; see 20 C.F.R. § 416.920(b).

At step two, the ALJ found that three of O'Brien's alleged impairments were "severe" within the meaning of the Act, including (1) a mental impairment provisionally diagnosed as schizotypal disorder or schizophrenia; (2) a personality disorder; and (3) a history of cannabis abuse. Tr. 478; see 20 C.F.R. § 416.920(c).

3 - ORDER AND OPINION

At step three, the ALJ found that O'Brien's impairments did not meet or equal the requirements of one of the Listings, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so severe as to automatically constitute a disability. Tr. 481; see 20 C.F.R. § 416.920(a)(4)(iii), (d).

The ALJ assessed O'Brien with the residual functional capacity (RFC) to perform a significant range of light work, limited by his inability to work with the public. Tr. 479; see 20 C.F.R. §§ 416.920(e), 416.945, 416.967; see also Social Security Regulation (SSR) 83-10.

At step four, the ALJ found O'Brien could no longer perform his past relevant work. Tr. 481; see 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f).

However, at step five, the ALJ determined that O'Brien remained capable of performing other work existing in significant numbers in the national economy, such as table worker, parts remover for salvage, and coil rewinder. Tr. 480; see 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

## DISCUSSION

**I.    The ALJ provided legally sufficient reasons to discredit the medical opinion of Barbara Perry, Ph.D.**

O'Brien alleges the ALJ failed to give clear and convincing reasons for rejecting the opinion of Dr. Perry, a psychologist who examined him in January, 2002, at his counsel's request. Tr. 391-406. The relative weight afforded the opinion of a physician depends upon his or her opportunity to observe and to get to know the patient as an individual. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must provide "clear and convincing reasons," supported by substantial evidence in the record, for rejecting the opinion of a claimant's physician when it is not contradicted by another doctor, and "specific and legitimate" reasons when it is. See Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600-601 (9th Cir. 1999).

In the instant case, the ALJ needed to provide only specific and legitimate reasons to discredit Dr. Perry's opinion, because it was contradicted by other medical sources. O'Brien argues that the progress notes of therapist Felice Nirenstein-Rich lend credence to Dr. Perry's provisional diagnosis of psychosis.

4 - ORDER AND OPINION

While that may be so, Nirenstein-Rich, a masters-level therapist, was not a proper medical source under the regulations, so her opinion is of limited relevance in evaluating medical source information. See 20 C.F.R. § 416.913; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ discredited Dr. Perry's mental residual functional capacity assessment, in which she opined that O'Brien was markedly limited in numerous areas, and that he would likely be absent from work "more than three or four times per month." Tr. 405. The ALJ gave two principle reasons for rejecting Dr. Perry's assessment. First, the ALJ stated that Dr. Perry's opinion was unreliable because by her own admission her diagnoses were provisional and of questionable validity. Dr. Perry cautioned that her findings were not confirmed because O'Brien was not fully cooperative with the evaluation. Tr. 398, 475. She noted that while he had twice been hospitalized for psychotic behavior, both instances "occurred in situations (prison) where it might be advantageous to have/feign such symptoms." Tr. 398. Dr. Perry stated that "it is unclear whether [O'Brien] is exhibiting symptoms of schizotypal disorder, is embellishing/confabulating his responses, enjoys story-telling, or is feigning mental illness." Id. For this reason, along with Cannabis and Alcohol abuse (in remission by O'Brien's report), Schizophrenia, and Intermittent Explosive Disorder, Dr. Perry's Axis I diagnoses also included "Malingering." Tr. 399.

The second reason the ALJ gave for discrediting Dr. Perry was that no other medical source agreed with her assessment of how much work O'Brien would miss except Michael Laurie, M.D., who stated that he concurred, but did not give reasons or medical evidence to support his April, 2002, opinion. Tr. 439. The ALJ, noting that Dr. Laurie had last seen O'Brien in November, 1999, found that his "limited contact" with O'Brien and his "conclusory and marginal endorsement" of Dr. Perry's assessment "failed to overcome the unreliability of [Dr. Perry's] functional findings...".Tr. 475-76.

In November, 1999, Paul Michels, M.D., examined O'Brien, who admitted to using marijuana "all day, everyday." Tr. 238-241. O'Brien said marijuana was "the only thing that keeps me from killing people," and reported that he slept with a loaded revolver in one hand and a machete in the other.

5 - ORDER AND OPINION

Tr. 238-39. He told Dr. Michels that he was in a bitter dispute with his neighbor, whom O'Brien described using racial epithets and vulgar language. Tr. 238. Dr. Michels opined that O'Brien might have an antisocial personality disorder, but that the evidence suggested O'Brien's "unconventional" presentation was more likely a lifestyle choice than the result of uncontrollable mental pathology. Tr. 241. He noted that O'Brien was a single parent, maintaining a home for himself and his 12-year-old son, and was engaged in part-time work repairing drift boats and bartering for goods and services. Id.

In January, 2002, David Northway, Ph.D., examined O'Brien, who was uncooperative and obstinate. Tr. 388-90. O'Brien wandered around Dr. Nothway's office asking questions like "Are there snakes in your office?" "Can I look in your wallet?" and "What are you drinking?" Tr. 388-89. Dr. Northway tried, without success, to get O'Brien to focus on the evaluation. He concluded that O'Brien may be manipulative. Tr. 389.

Both medical experts who testified at O'Brien's hearings expressed concerns about the validity of O'Brien's self-reports, and about his psychological presentation. The ALJ noted that Larry Hart, Ph.D., testified at O'Brien's 2002 hearing that he was unable to identify a diagnosis because of conflicts in O'Brien's self-reports. Tr. 476. While Dr. Hart indicated that he would not challenge Dr. Perry's findings, he also said he could not identify any functional limitations himself because of concerns about O'Brien's reliability. Tr. 91. The ALJ also found that John Crossen, Ph.D., who testified at O'Brien's 2004 hearing, agreed that O'Brien's diagnosis was uncertain, though most likely a schizotypal disorder or schizophrenia, along with a possible personality disorder and a history of cannabis abuse. Tr. 479. Dr. Crossen noted that O'Brien seemed to be able to choose a certain lifestyle notwithstanding his alleged hallucinations. Tr. 519. Therefore, Dr. Crossen opined that O'Brien did not have any significant work-related limitations. Tr. 519-20.

O'Brien argues that Dr. Crossen's testimony that he "clearly has odd patterns of thought, and perception, and speech, and behavior" supports Dr. Perry's conclusion that he can not work on a consistent, competitive basis. Tr. 522. Yet, notwithstanding these comments, Dr. Crossen clearly stated

6 - ORDER AND OPINION

his opinion that O'Brien did not have work-related limitations, save his limitation from working with the public. Tr. 520.

In sum, I find the ALJ provided specific and legitimate reasons, based on substantial evidence in the record, for rejecting the opinion of Dr. Perry.

II. **The ALJ provided legally sufficient reasons to discredit the lay witness opinion of Felice Nirenstein-Rich, M.S.**

O'Brien contends that the ALJ failed to address the chart notes and opinions of his therapist, Nirenstein-Rich, who counseled him at Options Counseling Services of Oregon, Inc., from November, 2000, until July 2, 2003. Tr. 289. In particular, O'Brien argues that Nirenstein-Rich's opinion of December 11, 2001, should be credited. In her "Treatment/Progress Notes" on that date Nirenstein-Rich opined that the voices O'Brien hears would interfere with his ability to work around others, and that "working alone would be tedious[.]" Tr. 410. According to O'Brien, Nirenstein-Rich's opinion and notes "support a finding that [he] is severely impaired by mental illness and that he is not malingering."

As noted above, Nirenstein-Rich is not a licensed or certified psychologist. Accordingly, under the regulations her opinion is not treated as that of an acceptable medical source, but as a lay witness opinion. See 20 C.F.R. § 416.913; see also Lewis, 236 F.3d at 511. The ALJ is required to account for lay witness testimony, and if he rejects it, to provide germane reasons for doing so. Id. However, the ALJ is not required to discuss non-probative evidence. See Vincent ex. rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Here, contrary to O'Brien's contention, the ALJ did address Nirenstein-Rich's counseling records. Tr. 477. He noted that O'Brien underwent counseling at Options Counseling Services of Oregon (Options) through July, 2003. Tr. 477-78. The ALJ commented that on January 15, 2003, O'Brien complained to Nirenstein-Rich of increasing challenges with his teenage son and anxiety about the status of his social security claim. Tr. 477. He commented that other notes chronicle O'Brien complaining that he hears voices, and that his chosen method for coping with the voices was "being involved with more

7 - ORDER AND OPINION

practical concerns" and attending counseling sessions. Tr. 477-78. The ALJ also reviewed a May 22, 2003, note written by Nirenstein-Rich in support of O'Brien's attempt to obtain a "Golden Access Pass" so that he could camp at reduced cost in the National Parks. Tr. 478. In the note she states that O'Brien "has been diagnosed with a permanent long term chronic disability[.]" Tr. 648. Finally, the ALJ noted that when Nirenstein-Rich left Options in July, 2003, her discharge summary included an Axis I diagnosis of Paranoid-Schizophrenia, and indicated that O'Brien had chosen counseling over medication in order to vent. Tr. 478.

In sum, the ALJ reviewed Nirenstein-Rich's chart notes and opinions as he was required to do. Though he did not expressly credit them, neither did he reject them. Accordingly, I disagree with O'Brien that the ALJ erred in his consideration of lay witness testimony.

### III. The ALJ's step two finding was supported by substantial evidence.

O'Brien contends the ALJ erred at step two of the sequential evaluation by failing to find that anemia was one of his severe impairments. In order to progress beyond step two of the five-step sequential evaluation, a disability claimant must prove (a) that he has a "medically determinable physical or mental impairment," and (b) that it is severe, within the meaning of the Act. See 20 C.F.R. §§ 416.904, 416.920(c); see also Edlund, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental impairment" the claimant must proffer medical evidence from "acceptable medical sources" listed in 20 C.F.R. § 416.913. This evidence should include: (1) medical history; (2) clinical findings; (3) laboratory findings; (4) diagnosis; (5) treatment prescribed, and the claimant's response, and prognosis; and (6) a statement about what the claimant can still do despite his impairment(s) "based on the acceptable medical source's findings." See 20 C.F.R. §§ 416.908, 416.912.

To show an impairment is "severe," the medical evidence must establish that it significantly limits his ability to do basic work activities, such as: walking, standing, sitting, lifting, pushing, pulling,

reaching, carrying, handling, understanding, carrying out and remembering simple instructions, using judgment, responding appropriately to supervisors, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921. An impairment is not severe if it has no more than a minimal effect on the claimant's ability to do these types of activities. See SSR 96-3p.

Here, the ALJ found three of O'Brien's alleged impairments were severe: (1) a mental impairment provisionally diagnosed as schizotypal disorder or schizophrenia; (2) a personality disorder; and (3) a history of cannabis abuse. Tr. 478. However, the ALJ concluded that the record did not support finding anemia to be a severe condition. Id. He cited Dr. Lauri's opinion that O'Brien was, at times, "severely anemic," but on the whole his condition would not significantly limit his ability to work. Tr. 477, 787.

O'Brien directs the court to Dr. Laurie's chart notes documenting his complaints of fatigue and weakness, and the blood transfusions he underwent, due to anemia. Tr. 339, 351, 612, 615, 618, 677-78. He alleges his fatigue is worst in the days preceding each transfusion, and that he sleeps all day following each transfusion. Tr. 514. According to O'Brien, at the very least fatigue would cause him to miss more than one day of work per month.

O'Brien's argument is unavailing for two reasons. First, Dr. Laurie's assessment of O'Brien's condition is more persuasive than O'Brien's own interpretation of Dr. Laurie's chart notes. Second, the ALJ rejected O'Brien's testimony, finding it inconsistent with the objective evidence of record- a finding O'Brien does not contest. Tr. 478. Yet O'Brien asks this court to now credit his testimony, and on that basis alone to find the ALJ's step two analysis unreasonable. I decline to do so, as I find substantial evidence in the record to support the ALJ's finding that O'Brien's testimony was not reliable. Accordingly, I affirm the ALJ's conclusion that O'Brien failed to meet his burden of proving he suffered from anemia to a degree that would constitute a severe impairment.

**IV.     The ALJ's step five finding was supported by substantial evidence.**

9 - ORDER AND OPINION

O'Brien alleges the ALJ erred at step five of the sequential evaluation by not applying the Medical-Vocational Guidelines (the guidelines) at 20 C.F.R. § 404, Subpt. P, App. 2, to find him disabled, per Rule 202.06. O'Brien also contends the ALJ erred by adopting the vocational expert's (VE) testimony, which he alleges was inconsistent with the Dictionary of Occupational Titles.

At step five of the sequential evaluation, the Commissioner must show that the claimant can do other work which exists in the national economy. Andrews v. Shalala, 53 F.3d at 1043. The Commissioner can satisfy this burden either by applying the guidelines at 20 C.F.R. § 404, Subpt. P, App. 2, or by eliciting the testimony of a vocational expert with a hypothetical question that sets forth all the limitations of the claimant. Id. If a claimant has functional limitations or work restrictions which prevent him from performing the full range of work at a given exertional level, the guidelines cannot be used at step five to determine whether he is disabled. Instead, the ALJ must elicit testimony from a VE to determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions. Tacket v. Apfel, 180 F.3d 1094, 1103-04 (9th Cir. 1999).

While a VE may be used to provide more specific information about the requirements of a particular job as it is performed in a particular setting, the ALJ relies primarily on the Department of Labor publication Dictionary of Occupational Titles (DOT) including its companion publication, Selected Characteristics of Occupations, for information about the requirements of work. 20 C.F.R. Part 404, Subpart P, Appendix 2 § 200.00(b); see also SSR 00-4p. These references classify occupations by exertional level, as defined in 20 C.F.R. § 416.967, and by skill level, as defined in 20 C.F.R. § 416.968.

Here, the ALJ elicited the expert opinion of a VE, rather than apply the guidelines, because he found that O'Brien could not perform a full-range of light work. Tr. 481. He asked the VE to consider a hypothetical worker with O'Brien's age, education, and work experience, limited to lifting and carrying no more than 25 pounds frequently, and 50 pounds occasionally, with limited fine detail perception at a distance due to visual loss of the left eye, limited exposure to hazards, and preclusion from working with

10 - ORDER AND OPINION

the public. Tr. 529-31. The VE testified that this hypothetical person could still perform the jobs of table worker, parts remover for salvage, and coil reminder. Tr. 530.

To the extent O'Brien contends that the ALJ failed to include all the limitations he alleges in the hypothetical question, I find that the ALJ properly credited those limitations supported by substantial evidence in the record, and rejected those that were not. See Osenbrock v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

O'Brien's contention that the VE's testimony conflicts with the DOT's exertional level classifications for these jobs is also without merit. He contends the DOT lists the coil winder position as "light" exertional level work, whereas the VE testified that it was "medium." He also contends the DOT lists the table worker job as "sedentary" whereas the VE testified that is was "light." Yet, in both instances the DOT exertional level classifications for these jobs is consistent with O'Brien's RFC for "light" level work. See DOCOT 724.684-026 (Coil Winder) and 739.687-182 (Table Worker). Thus, no error resulted from the VE's misstatements because O'Brien's RFC allows for a reduced range of light work, and based on his RFC, he could also perform sedentary work. See 20 C.F.R. § 416.967(b)(stating that a claimant who can perform light work can also perform sedentary work unless he has loss of fine dexterity or inability to sit for a long period of time).

In sum, the ALJ properly adopted the VE's testimony that there are a significant number of jobs in the national economy that O'Brien remains capable of performing. Since the ALJ's hypothetical question was based on substantial evidence, so too was the VE's testimony. Accordingly, I affirm the ALJ's step five determination that O'Brien is not disabled.

## CONCLUSION

Based on the foregoing, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED.

IT IS SO ORDERED.

DATED this 9th day of November, 2005.

11 - ORDER AND OPINION

/s/ Michael W. Mosman
Michael W. Mosman
United States District Court Judge